HARGADINE-MCKITTRICK DRY-GOODS COMPANY v. SWOFFORD BROTHERS DRY-GOODS COMPANY.

**No. 836.\*** (63 Pac. 281.)

1. CONTRACTS—*Assumption of Indebtedness*—*Rights of Parties.* Where a mercantile company, in consideration of the surrender to it of large valuable property rights, upon a part of which it has a mortgage, assumes and agrees to pay the mercantile indebtedness of the mortgagor, the mercantile company cannot have and hold all of the benefits and property accruing to it in consequence of the transaction and repudiate its agreement to pay mercantile creditors on account of the alleged fraud of the assignor in concealing the true amount of his indebtedness.

2. ——— *Fraud—Remedies.* The mercantile company, upon discovering the fraud, had two remedies: it could have repudiated the whole transaction, restored the *status quo*, and been relieved of all of the obligations of the contract; or it could have affirmed the contract and borne the obligations imposed, and had recourse upon the mortgagor for damages sustained on account of his fraud and deceit.

---

\*Petition for order to certify allowed by supreme court January 11, 1901. Case pending.—REP.

Error from Douglas district court; S. A. Riggs, judge. Opinion filed January 1, 1901. Affirmed.

*Rossington, Smith & Histed,* for plaintiff in error.
*Ellis, Cook & Ellis,* for defendant in error.

The opinion of the court was delivered by

McElroy, J. : This action was brought by defendant in error Swofford Brothers Dry-goods Company against Hargadine-McKittrick Dry-goods Company for the recovery of the amount due upon account for merchandise sold to A. R. Kramer, doing business under the firm name of A. R. Kramer & Co., the payment of which indebtedness was alleged to have been assumed by the Hargadine company as a part consideration for the purchase of a stock of goods, fixtures and appliances of trade. The defendant answered : (1) A general denial ; (2) admitting the corporate existence of the plaintiff and of the defendant ; (3) alleging that no consideration whatever was received by defendant for making any agreement or for the assumption of payment of the amount due plaintiff from Kramer & Co. ; and (4) alleging that whatever promises were made for the payment of the mercantile indebtedness of Kramer & Co. by defendant were induced through the fraud of Kramer & Co., and were made in ignorance of the existence of any such indebtedness due to plaintiff.

The plaintiff's reply was a general denial. A trial was had to the court and a jury, resulting in a verdict for plaintiff in the sum of $1078.05. A motion for a new trial was overruled, and judgment rendered upon the verdict. The defendant, as plaintiff in error, presents the record to this court for review, and alleges

error in the proceedings of the trial court : First, that the court erred in excluding competent evidence ; second, that the court erred in giving instructions to the jury and in refusing to give instructions requested.

The record shows that A. R. Kramer was engaged in the mercantile business at Galena, Kan., under the firm name of A. R. Kramer & Co. ; that the Hargadine company is a wholesale mercantile company at St. Louis, Mo. ; that the Swofford company is a wholesale mercantile house at Kansas City, Mo. ; and that the McKittrick company and A. R. Kramer, on March 2, 1896, entered into the following agreement :

"This agreement, made this 2d day of March, 1896, between the Hargadine-McKittrick Dry-goods Company, of St. Louis, Mo., and A. R. Kramer, of Galena, Kan. :

"Witnesseth, that it is hereby understood and agreed that the stock of goods contained in the store house known as the Gill-Prehm block, situated in the city of Galena, Cherokee county, Kansas, and run under the firm style of A. R. Kramer & Co., (same being composed of A. R. Kramer individually,) is the sole property of said Hargadine-McKittrick Dry-goods Company, and to remain so until the following indebtedness, amounting to fourteen thousand nine hundred thirty-five dollars ($14,935.27) is paid. Same is evidenced by three promissory notes, one due January 1, 1897, for $5000, bearing interest at six per cent. per annum from date ; one note dated March 2, 1896, and due one day after date, for $8431.24, without interest ; one note dated March 2, 1896, and due one day after date, for $1504.03, with interest at the rate of six per cent. per annum—all of said notes to be indorsed by Mrs. Lottie Kramer, wife of A. R. Kramer.

"It is further agreed that the said A. R. Kramer has the privilege of paying at any time whatever cash he may raise, on account of the note due January 1, 1897, for $5000.

"It is also agreed that the note for $8431.24, dated

Hargadine v. Swofford.

March 2, 1896, and due one day after date, is to be paid off out of the proceeds of the sales, after deducting expenses, etc. ; and after invoicing the stock at the expiration of every six months, any balance that may remain to the credit of A. R. Kramer & Co. is to be applied to the payment of said note.

"It is further agreed that the note for $1504.03, dated March 2, 1896, and due one day after date, is to run one year, with privilege of renewing, but the interest on same is to be paid annually.

"It is further agreed that the said A. R. Kramer is to draw a salary not to exceed sixty-five dollars ($65) per month, and that the gross expense for conducting the business is not to exceed at any one time $300 per month or $3600 per year. The said A. R. Kramer is to make a weekly report to said Hargadine-McKittrick Dry-goods Company, showing amount of sales, cash on hand, expenditures for the week, and daily deposits of money received (all such deposits being the property of said Hargadine-McKittrick Dry-goods Company until the foregoing sums named are paid), and to make remittances weekly. The stock of merchandise is to be invoiced every six (6) months, same to be taken at actual cost.

"It is also further agreed that the said Hargadine-McKittrick Dry-goods Company is to grant the said A. R. Kramer & Co. a line of credit not to exceed $2000, as follows : $1500 in dry-goods, and $500 purchases made from other houses. No purchases are to be made or debt created without the authority of said Hargadine-McKittrick Dry-goods Company. All cash is to be remitted to the said Hargadine-McKittrick company, and all bills to be paid through them.

"It is also further agreed that, on the final payment of all said notes as mentioned in this agreement, the stock of merchandise is to be turned over to the said A. R. Kramer as his property. The said A. R. Kramer shall at any time have the privilege of taking up the entire debt due the said Hargadine-McKittrick Dry-goods Company.

"It is also agreed that the said Hargadine-Mc-Kittrick Dry-goods Company, through their rep-

resentatives, is to have full access to the books and everything connected with the business at any time, without notice; and the expense incurred for such investigation to be defrayed by the said A. R. Kramer & Co.

"Upon the failure of said A. R. Kramer to carry out any part of the above agreement, it is hereby agreed that the said Hargadine-McKittick Dry-goods Company can at any time take possession of said stock of goods without notice.

"In witness whereof, we have hereunto set our hands and seal, this 7th day of March, 1896."

Pursuant to the agreement, Kramer managed the business, submitted weekly statements and other reports, remitted money, and at semiannual periods submitted what purported to be invoices with trial-balances, showing in detail the condition of the business, and the amount of stock on hand, with a list of creditors. The last of such semiannual statements submitted was on August 1, 1898. The business was unsatisfactory. In December, 1898, the Hargadine company determined to close out the business, and, with that end in view, wrote A. R. Kramer the following letter:

"St. Louis, Mo., December 3, 1898.

"A. R. Kramer, Esq., Galena, Kan.: DEAR SIR— We regret to say that we feel it is necessary for the protection of our interest that we should take possession of the stock of merchandise which we have been running under the agreement made March 2, 1896, in your name. You can readily see for yourself that the business is going behind every day, and will not support the expense of keeping it going. The expense lately appeared to be thirty-five or forty per cent. of the total sales, and, of course, you cannot begin to make that much profit, and the whole thing is daily getting worse. Mr. E. S. Purdy, one of our confidential employees, will be in Galena Monday morning, and you will be kind enough to turn the stock of

goods to him.   We have arranged to have the same packed up and shipped without delay.   It is necessary for us to do this on rather short notice, as we have disposed of the goods and made arrangements to deliver them in time for the holiday trade.

"We feel that you have worked hard and faithfully to bring this unfortunate deal to a more satisfactory close, and are very sorry, indeed, that it has not turned out better.   We do not, however, consider that you are responsible for the failure.   We are willing to give you a clean receipt in full for all of your indebtedness to us on delivery of the stock of goods, and will, of course, return you all of your notes, which, I think, is all that you could expect under the circumstances.

"I regret that Mr. Davis was not able to go down to attend to this matter, as he has been familiar with it for so long, but his physician orders him not to go out of town for several days, and this matter will not keep.   Mr. Davis, however, will be in Galena by the end of the week or the first of the following week, and settle up the whole matter with you.

"Mr. Purdy is authorized to say to any one to whom the firm of A. R. Kramer & Co. may owe money for legitimate claims against them of any kind, arising out of the mercantile business, that this company will settle them up in full, and Mr. Davis will attend to the matter as soon as he is able to come down.

"I trust that you will give Mr. Purdy such assistance as he finds necessary to carry out his instructions in the matter.   Any cash on hand, belonging to the firm, I wish you would remit at once to us, and you can say to the owner of the building that Mr. Davis will be down and adjust with him any unsettled matter relative to rent or lease upon the storehouse.   If you can do anything toward selling out the furniture and fixtures there I wish you would do so.

"Again regretting the necessity for taking action in the matter, and with best regards, believe me,

Very truly yours,

THOS. H. MCKITTRICK,

*President Hargadine-McKittrick Dry-goods Company.*"

On December 6 thereafter, one Purdy, representing the Hargadine company, delivered to Kramer his notes, stating that the company would pay the mercantile indebtedness of Kramer & Co., and Kramer surrendered the possession of the store and fixtures. The Hargadine company, as above stated, took possession of the entire stock of goods and fixtures, sold the fixtures in payment of the rent, and shipped the stock of goods to the Indian territory and disposed of the same. On that date Kramer & Co. were indebted to the Swofford company for goods purchased in the sum for which judgment was rendered; payment was demanded from the Hargadine company, which was refused, and this suit was instituted.

In the letter of December 3, 1898, Kramer & Co. were advised that "Mr. Purdy is authorized to say to any one to whom the firm of A. R. Kramer & Co. may owe money for legitimate claims against them of any kind, arising out of the mercantile business, that this company will settle them up in full, and Mr. Davis will attend to the matter as soon as he is able to come down."

Prior to and at the time the goods and fixtures were delivered the following conversation occurred between Purdy and Kramer:

"Purdy: Are your accounts all on the ledger?

"Kramer: Yes, with the exception of minor accounts around town that I kept no ledger account of.

"Kramer: Now this is to release me absolutely?

"Purdy: The instructions of that letter are to be carried out.

"Kramer: And I am to have a clean score and these debts are all to be paid up?

"Purdy: Yes, all of the indebtedness of your concern, as that letter says, shall be paid."

The contract of March 2 was executed nearly three years prior to that date; it does not cover after-acquired property, nor the fixtures. The stock of goods had been undergoing changes during all of that period. The evidence shows that one-half of the stock, at the time it was delivered to the Hargadine company, consisted of new goods, a large portion of which had been purchased from the Swofford company.

It was provided by the agreement that Kramer should purchase goods on credit, and that the Hargadine company should sell him goods on credit. The fixtures, some $400 in value, were not included in the agreement. All of this property was taken possession of at the time the Hargadine company agreed to pay the mercantile indebtedness of Kramer & Co.

The fact that Kramer & Co. surrendered to plaintiff in error a large amount of after-acquired property, together with the fixtures, constituted a legal and abundant consideration for the agreement of plaintiff in error to pay the mercantile indebtedness of Kramer & Co. It is contended, however, that on account of the fraud of Kramer & Co. in concealing the purchase of goods from the Swofford company, and the existence of such account, plaintiff in error is relieved from liability therefor. It will be noted that the Hargadine company discovered the alleged fraud immediately after they took possession of the goods, and, notwithstanding this fact, sold the fixtures, shipped the goods out of the state, and retained everything they had acquired by reason of the agreement. When the Hargadine company discovered the fraud practiced, they had two remedies: They could have repudiated the whole transaction, restored the *status quo*, and been relieved of all the obligations of the con-

tract; or they could have affirmed the contract and
borne the obligations imposed, and then had recourse
upon Kramer & Co. for damages suffered on account
of the fraud and deceit.

Plaintiff in error cites *Clay v. Woodrum*, 45 Kan. 116,
25 Pac. 619, in support of the contention that they
may retain the benefits of the executed contract, and
repudiate its obligations on account of fraud. This
case does not sustain the contention. The defense in
*Clay v. Woodrum* was a failure of consideration and
non-compliance with the contract. There was no
question of fraud in it. The court held that the al-
legations in the pleadings on the contract between the
original parties was "executory"; that facts had been
averred which, if proved, would show that the con-
tract had not been executed prior to the commence-
ment of the action by the third party; that in reality
no contract had been consummated, and so no right
of action existed. In the case at bar the Hargadine
company apparently made no effort to ascertain the
real condition of Kramer & Co. They had no right
to rely upon representations made in August to con-
summate a trade in December. They cannot close
their eyes to the real financial condition of Kramer &
Co. at the time they make and consummate a contract
by which they acquire large, valuable property rights,
and afterward be permitted to say that they were im-
posed upon, when it reasonably appears that by the
use of ordinary diligence they could have ascertained
the real financial condition and could have known of
the obligations they were assuming.

It is contended that the court improperly excluded
the testimony and tender of proof made by the defend-
ant at the trial, as follows:

"Ques. Is that one of the semiannual reports of
the kind you have mentioned? Ans. Yes, sir.

Hargadine v. Swofford.

"Q. Was that submitted to you by Mr. Kramer?
A. It was sent to us by Mr. Kramer.

"Exhibit '1' now offered in evidence again.

"Objected to as incompetent and immaterial.

"Mr. Histed: That brings us to the point we stopped at yesterday.

"The court: Yes, we are right up against it. Now I will hear you fully.

"Mr. Histed: Defendant proposes to follow up this statement of January 10, 1897, exhibit '1,' with other letters and statements of the same character, submitted by A. R. Kramer to Hargadine-McKittrick Dry-goods Company, and to offer further and other evidence to establish concealment and misrepresentation by Kramer concerning his dealings with outside mercantile houses and the extent of his mercantile indebtedness.

"And defendant's counsel now offers to show the course of dealing between A. R. Kramer and Hargadine-McKittrick Company, and to show that during all this time Kramer misrepresented the situation to Hargadine-McKittrick Dry-goods Company ; that they had no knowledge of the situation as it in fact existed at the time the letter of December 3, 1898, was written, for the purpose of explaining the letter and the avoiding of any claim that might be made under that letter of any liability upon his indebtedness to the plaintiff. And defendant particularly offers and expects to prove by this testimony that this claim of Swofford Brothers Dry-goods Company was one of those the knowledge of which was concealed from Hargadine-McKittrick Dry-goods Company.

"The plaintiff objects to this evidence, unless counsel proposes further to follow up this proof with a showing that upon the discovery of the concealment or fraud the defendant took steps to rescind the contract and to waive the benefits derived by the defendant company from contract made with Kramer under the letter of December 3, 1898.

"The court: Do you expect to offer any proof in that direction? The defendant in substance answered that they did not intend to offer such evidence. The court thereupon sustained the objection."

The testimony offered in support of the alleged fraud was too remote, under the circumstances, and was properly excluded, in the absence of any offer to show an effort on the part of plaintiff in error to rescind the contract upon the discovery of the alleged fraud. The testimony was properly rejected.

If this testimony was properly excluded, the court committed no reversible error in giving and refusing instructions. The motion for a new trial was properly overruled. The judgment is affirmed.

MAHAN, P. J. (dissenting) : I cannot concur with my brother judges in their judgment in this case.

By this action the defendant in error sought to recover from the plaintiff in error the amount of an indebtedness due to defendant in error from one Kramer for goods sold to him, by reason of an alleged contract between Kramer and plaintiff in error, whereby Kramer sold plaintiff in error a stock of goods, and as a part of the consideration therefor plaintiff in error promised to pay to defendant in error its claim against Kramer.

The answer and the evidence disclose a different state of facts, in my view.

The answer sets forth a prior contract between Kramer and Hargadine-KcKittrick Dry-goods Company under which the dry-goods company had a right to the possession of the stock of goods at any time — not a part of the goods, as stated in the first clause of the syllabus of the majority of this court. After this contract was made, Kramer was permitted to manage the business for some months, making statements at stated times, as provided by the contract, and receiving a fixed salary. The contract also limited the amount of expense to be incurred, and provided that the dry-goods

company should furnish a given amount of addition to the stock, and that Kramer should be permitted to buy goods not exceeding a certain amount from other houses, to be promptly reported to and paid for through the dry-goods company.

The business not proving satisfactory, the debt of Kramer rather increasing than being reduced by the proceeds of the sales made by Kramer, the Harga-dine-McKittrick Dry-goods Company resumed possession, surrendering their evidences of debt to Kramer, amounting to about $17,000. The value of the property taken possession of was about $8000.

The reports of Kramer prior to and at the time of the surrendering of the possession by him disclosed a small indebtedness for rent, and probably some other items.

Relying upon these statements to represent the true condition of affairs, the Hargadine-McKittrick Dry-goods Company agreed, by a letter to Kramer announcing their intention to discontinue the arrangement and resume possession of the stock, to pay all the indebtedness contracted by Kramer and start him off anew.

His reports, however, as to purchases of goods were false and made with intent to deceive the Hargadine-McKittrick Dry-goods Company. So that, when they made the promise to pay the outstanding debts of Kramer, the claim of Swofford Brothers was unknown to the Hargadine-McKittrick Dry-goods Company — was not in their contemplation in making the promise, having been purposely concealed from them by Kramer.

Upon the trial, the plaintiff company having proved Kramer's indebtedness to it and the promise in writing of the Hargadine-McKittrick Dry-goods Company to pay Kramer's indebtedness growing out of the busi-

14—10 KAN. APP.

ness, the defendant offered to prove the fraudulent
practices of Kramer, by which it was induced to make
the promise, and the trial court, upon the objection
of the plaintiff company, held such proof of fraud on
Kramer's part to be inadmissible, unless the defendant
would also prove that it had rescinded the transaction
*in toto* by restoring to Kramer the stock of goods and
putting Kramer *in statu quo*.

My judgment is that this was error; that a re-
scission was not necessary between Kramer and the
Hargadine company to enable it to defend against its
promise; that the rule of law announced by the
supreme court in *Clay v. Woodrum*, 45 Kan. 116, 25
Pac. 619, applies.

Had Kramer been compelled by the Swofford com-
pany to pay the debt, could he have enforced the
promise induced by his fraud, in an action for in-
demnity? His fraudulent acts inducing the promise
would have been a good defense. Swoffords occupy no
better position than Kramer would have occupied.

The court refused to instruct the jury to this effect.
This was also error.

In my view of the case, the judgment should be
reversed and a new trial awarded.