No. 25,128.

KANSAS CITY WHOLESALE GROCERY COMPANY, *Appellant*, v. ROSS RIDGEWAY and H. F. OSTERKAMP, *Appellees*.

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Given by Vendee of Stock of Merchandise Sold Without Compliance With Bulk-sales Law—Note Given for Valuable Consideration.* The vendee of a stock of merchandise sold in bulk without compliance with the provisions of the bulk-sales law, as part payment for the merchandise and at the request of the vendor, executed his promissory note to a creditor of the vendor. *Held*, the note was given for a valuable and adequate consideration.

2. SAME—*Stock of Merchandise—Sold Without, Compliance With Bulk-sales Law—Parol False Representations of Vendor—Note Valid When Sued by Payee.* A stock of merchandise was sold in bulk without compliance with the bulk-sales law. The vendee, at the request of the vendor, and as a part payment for the merchandise, executed his promissory note to a creditor of the vendor. There was no fraud on the part of the payee of the note but

the vendor, by parol, falsely represented to the vendee that he had no other creditors. *Held,* the vendee was not justified in relying upon such parol false representations, and further *held,* that such false representations of the vendor do not constitute such fraud in the inception of the note as will enable the maker to defeat payment of the note when sued by the payee.

Appeal from Trego district court; JACOB C. RUPPENTHAL, judge. Opinion filed March 8, 1924. Reversed.

*J. H. Jenson,* of Oakley, *John R. Parsons,* of Wakeeney, and *Guy L. Hursh,* of Topeka, for the appellant.

*Herman Long,* and *W. H. Wagner,* both of Wakeeney, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action by the payee upon a promissory note. The defense was failure of consideration and fraudulent representations which induced its execution. The case was tried to the court, who made findings of fact and conclusions of law and rendered judgment for defendant. The plaintiff has appealed.

The plaintiff's motion to set aside certain findings and that other specific findings be made was overruled, as was also its motion for a new trial. This makes it necessary for us to examine the entire record. The note sued upon was given under the following circumstances: Mrs. L. L. Wurst owned and conducted a general merchandise store at Ogallah. She was indebted to various wholesale firms, including the plaintiff. She also owned the store building, which was mortgaged for $2,500. The defendant Osterkamp was a merchant at Wakeeney. The defendant Ross Ridgeway, a son-in-law of Osterkamp, wanted to buy the Wurst stock of merchandise but had no money with which to do so. Osterkamp undertook to buy it for him, or to help him to buy it. On October 8, 1921, both went to Ogallah and made an agreement with Mrs. Wurst, which recites that she had sold to Ross Ridgeway the fixtures for $1,000 and the stock at invoice. The inventory was to be taken the next day, Sunday. Mrs. Wurst and Ridgeway commenced taking the inventory in the morning. They called to their assistance John Dolens, a representative of the plaintiff, and Nat Wells. They reached Ogallah in the afternoon and assisted in taking the inventory, which was completed that day. The next morning Mr. Dolens and Mr. Federhen, credit man for the H. D. Lee Mercantile Co., to whom Mrs. Wurst was indebted, were in Osterkamp's store at Wakeeney. At that time Mr. Dolens said he did not think Mrs.

Wurst could pay out. Dolens and Federhen went to Ogallah and later in the day returned to Wakeeney with Mr. Ridgeway and Mrs. Wurst. They all went to Osterkamp's store. At that time Ridgeway and Osterkamp, at the request of Mrs. Wurst, executed to the plaintiff the note sued upon in this action. It was for the amount Mrs. Wurst owed the plaintiff. They also executed to the H. D. Lee Mercantile Co. a note for the amount Mrs. Wurst owed that firm. The amount of these two notes was deducted from the amount of the inventory of the merchandise and fixtures and Mr. Osterkamp gave Mrs. Wurst his check for the difference, $850. This transaction closed the deal for the sale of the stock and fixtures.

No effort was made either by Mrs. Wurst or the purchasers to comply with the provisions of the bulk-sales law. Mr. Federhen testified that he had a conversation with Mr. Osterkamp at the hotel at Wakeeney on Sunday evening in which he told Osterkamp of the provisions of the bulk-sales law and that he was entitled to a verified list of creditors from Mrs. Wurst and to give notice to the creditors of the purchase of the store. Osterkamp admits that the bulk-sales law was discussed in his conversation with Federhen but his testimony differs as to just what was said. At any rate, there was no attempt made by any of the parties to comply with the provisions of that law, and there is no claim that the plaintiff in any way prevented that being done.

It is contended on behalf of Osterkamp that at the time he executed the note in question Mrs. Wurst orally represented to him that the $850 he was paying her in cash would take care of all her creditors except the plaintiff and the H. D. Lee Mercantile Co., to whom he and Ridgeway gave their notes. There is no claim that Mr. Dolens made such a representation; in fact, the specific evidence is that he did not do so, and the court made a finding to that effect.

After this deal was closed Ridgeway took possession of the merchandise stock at Ogallah. He paid rent to Mrs. Wurst for the building, $25 per month. He bought some new merchandise; Osterkamp sent some merchandise from his store, a part, or all of which, he later took back. Ridgeway kept books for a little while and then quit, so there is no record showing just what, or from whom, or how much, he bought; how much he sold, how much he used, how much merchandise Osterkamp put in the store, or how much he took out. Mrs. Wurst used the $850 paid her by Osterkamp in paying her

bills, but it was insufficient. About three weeks later there were some negotiations between Osterkamp and Mrs. Wurst with reference to his buying her building and on November 1 he wrote wanting her to make him a statement of her outstanding bills so that he would know how much he would be compelled to pay. She answered that she would expect him to assume the balance of the accounts, of which she would give him a list when completed, and that it would make the building cost him between $3,400 and $3,500, and on November 7 she sent him a list of accounts amounting to $1,240 in addition to the $2,500 mortgage on the building. It appears that this deal was never carried out. After receiving this list of creditors on November 7, Osterkamp wrote the plaintiffs and told them he would not pay the note which he and Ridgeway had given. Three of Mrs. Wurst's creditors whom she did not pay brought suits on their respective accounts in justice court, procured judgment, levied upon the merchandise in the store and sold enough of it to satisfy their judgments and the costs. The three judgments amounted to about $155. Osterkamp conceived the notion that he was entitled to be subrogated to the rights of the creditors of Mrs. Wurst, whom she paid out of the $850 he paid her at the time the stock was purchased, and he filed a suit against her in district court setting up his claim and attaching the stock of merchandise. He procured judgment by default and the remaining portion of the stock of merchandise and the fixtures were sold at sheriff's sale to satisfy that judgment.

The court's findings are lengthy, tend to repetition, contain some immaterial matter, and need not be set out at length. So far as necessary to be considered they are: That the consideration for the note sued upon was the sale by Mrs. Wurst of her entire stock of merchandise and fixtures to the defendants; that none of the provisions of the bulk-sales law were complied with; that Mrs. Wurst's debts at that time amounted to about $7,000, of which $2,500 was secured by mortgage on the real estate; that Mrs. Wurst orally represented to defendants that the $850 cash she received would pay her debts, other than to plaintiff and the H. D. Lee Mercantile Co., to whom defendants gave their notes; that such representations were relied upon by defendants; that plaintiff's representative assisted Mrs. Wurst in making the sale to defendants; that neither the plaintiff, nor its representative, Mr. Dolens, made any false repre-

sentation to the defendants; that at the time of the trial defendants did not have any of the merchandise or fixtures purchased from Mrs. Wurst, all having been disposed of, or sold by the sheriff under the various attachment orders which are recited.

Though not very material in this case, perhaps we should note that we do not find support in the evidence for the findings of fact made by the court (Nos. 23 to 26) that Ridgeway was the purchaser of the stock of merchandise and Osterkamp was the purchaser of the fixtures. The evidence seems conclusive that it was all handled together.

The finding of the court that the plaintiff did not waive its rights under the bulk-sales law by anything it, or Mr. Dolens, its representative, did is not germane to the issues. Plaintiff did not assert any rights under the bulk-sales law; defendants did not plead that such rights had been waived, and no one, so far as the record shows, had contended that such rights had been, or had not been, waived by plaintiff. If this issue had been before the court it is possible the finding should have been the other way (*Whitehouse v. Nelson,* 43 Wash. 174), but we shall not decide this question, for it is not before us.

As a conclusion of law the court found "that there has been a total failure of consideration of the note sued on and that judgment should be for defendants," and rendered judgment accordingly.

The conclusion of the court was erroneous. There was a good and valid consideration for the note, ample in amount. It was given as a part of the purchase price of the stock of merchandise and fixtures, which defendants purchased from Mrs. Wurst at a price which they agreed upon, and which appears to have been reasonable, and the defendants took possession of the merchandise and fixtures so purchased and by virtue of such purchase and possession became the owners thereof. Possibly the court reached its conclusion because the bulk-sales law had not been complied with. That statute does not purport to make the sale void as to the vendee if its terms are not complied with. It provides that such a sale shall be "void as against creditors of the seller." (R. S. 58-101.) The term "void" is usually interpreted as "voidable" in a proper and timely proceeding brought by the creditors of the vendor. (27 C. J. 877 and citations.) The sale is valid as between the vendor and the vendee and is effective to pass title to the property to the vendee (27 C. J. 887,

and cases cited), and does not necessarily prevent a recovery by the seller of the purchase price. (*Escalle v. Mark*, 43 Nev. 172.) Naturally, the sale is valid if the vendor has no creditors or if the vendor, notwithstanding the failure to comply with the statute, in fact pays his creditors, or if the creditors waive the right given them by the statute, or so conduct themselves as to be estopped from asserting such rights. (27 C. J. 878.) Though these instances are rare. (*Coleman, Trustee, v. Costello*, ante, p. 463.) Hence, the fact that the provisions of the statute were not complied with would not constitute a failure of consideration for the note given as a part of the purchase price by vendee to a creditor of the vendor. If it had any effect upon that matter it would impart a consideration to the note, for the effect of the statute, when it is not complied with, is to make the vendee liable to the creditors of the vendor. (*Burnett v. Trimmell*, 103 Kan. 130, 173 Pac. 6.) Being thus liable, the vendee could discharge that liability by paying the creditor in cash, or could directly bind himself by executing his promissory note to such creditor. As between the vendor and the vendee the situation might be such that because of a failure or partial failure of consideration the vendee might recover from the vendor money which he had paid or property which he had conveyed or transferred to the vendor (*Krolik v. Kaczmarek*, 208 Mich. 378), but we do not have that situation here.

The appellees contend that, Mrs. Wurst having paid some of her creditors with the $850 which Osterkamp paid her upon the purchase of the stock of merchandise and fixtures, he became subrogated to the rights of the creditors so paid and thereby acquired the right to maintain an action against Mrs. Wurst for the amount he had so paid her, and to attach the stock of merchandise and fixtures and sell the same to reimburse him. There is no merit in this contention for the reason (*a*) Osterkamp and Ridgeway already had possession of the stock of merchandise and fixtures and had the right to sell the same in the ordinary course of business, at auction, or in bulk, and had been selling from the stock in the ordinary course of business. Hence, their right of possession and sale was not increased by the attachment. In *Newman v. Garfield*, 93 Vt. 16, it was held that even the creditors of the seller cannot attach the property as that of the vendee, but must resort to equity to set aside the sale or charge the purchaser as trustee for them, and (*b*) the vendee does not have a

lien upon the property for the money paid as he is the owner of the property and ownership is inconsistent with a lien. Having acted in violation of law, the vendee does not come into equity with clean hands (*Farrar v. Lonsby Lumber & Coal Co.*, 149 Mich. 118), and (c), to be entitled to subrogation the payer must have acted on compulsion to save himself from loss. (37 Cyc. 375.) The payment by Osterkamp was not so made.

In the cases cited by appellees, *Bank v. Davis*, 103 Kan. 672, 175 Pac. 972; 109 Kan. 758, 202 Pac. 97, and *Bank v. Hillman*, 104 Kan. 264, 178 Pac. 420, subrogation was allowed only for sums the purchaser was forced to pay creditors for the purpose of protecting his title to the stock of merchandise purchased. However, the case of *Osterkamp v. Wurst* was not appealed, and is before us only so far as the defendants in this action claim some rights by reason thereof against the plaintiff in this case. On that point we hold that it had no effect upon the rights of the plaintiff in this case, having no merit in itself, and this plaintiff, not having been a party to it, is not bound by it.

It may be noted that the plaintiff in this case does not base his action upon the failure of the vendor and vendee to comply with the bulk-sales law. His action is founded upon a promissory note executed by defendants. The defendants are the ones who seek to take advantage of their failure, and the failure of their vendor, to comply with the statute. This is a matter which does not inure to their advantage.

This disposes of the case so far as the conclusion of law is concerned upon which the court based its judgment. But, because defendants alleged fraud as one of their defenses, and the court made some findings of fact pertaining thereto and appellees have argued this question in their brief, we shall dispose of it. Upon this branch of the case defendants contend that Mrs. Wurst falsely represented to them that the $850 cash, which they paid her as a part of the purchase price of the merchandise and fixtures, would pay her creditors (other than plaintiff and the H. D. Lee Mercantile Co.); that this was false; that defendants relied upon such representations and were induced thereby to purchase the stock of merchandise and fixtures and to execute the note sued upon. The court found that Mrs. Wurst did make such false representations, and that defendants relied thereon, but does not find that defendants were induced by

such false representations to execute the note sued upon, unless it can be said that he does so by inference. The court specifically finds that neither the plaintiff nor Mr. Dolens, its representative, made any misrepresentations to the defendant as to any matter connected with the execution of the note in question or with reference to the sale of the stock of merchandise and fixtures. This relieves the plaintiff of any fraud on its part. But, appellees argue that this action is between the original parties to the instrument and that the fraudulent representations of Mrs. Wurst are therefore imputable to plaintiff. Appellees' argument falls when we observe, as we must, that the defendants had no right to rely upon Mrs. Wurst's oral representations concerning her debts. It was their duty, as well as their right, to require the seller to furnish them with a verified list of her creditors. To permit a vendee, under such circumstances, to rely upon the oral representations of the vendor as to creditors, and thus escape a liability otherwise binding upon him, would be to render the bulk-sales law nugatory. The vendee, in such a transaction can relieve himself from liability by complying with the law; he cannot do so by ignoring it. Under the findings of fact made by the court, there was no misrepresentation by Mrs. Wurst which the defendants were entitled to rely upon, or upon which they can be heard to say they relied. Hence, there is no misrepresentation by Mrs. Wurst available to defendants which can be imputed to the plaintiff.

Appellees cite *Hargadine v. Swofford,* 65 Kan. 572, 70 Pac. 582; *Clay v. Woodrum,* 45 Kan. 116, 25 Pac. 619; *Wilkham v. Grant,* 28 Kan. 517; and *Bice v. Nelson,* 105 Kan. 23, 180 Pac. 206, 181 Pac. 558, in support of their claim that false representations of Mrs. Wurst are binding upon plaintiff. None of those cases arose under the bulk-sales law and they are not applicable. In those cases the party-seeking to be relieved because of false representations was entitled to rely upon the representations made, here the purchaser was not entitled to rely upon the oral representations of Mrs. Wurst that she had no other creditors.

From what has been said it necessarily follows that neither of the defenses relied upon can be sustained. The judgment of the court below will be reversed with directions to enter judgment for the plaintiff.