HARGADINE-MCKITTRICK DRY-GOODS COMPANY v.
SWOFFORD BROTHERS DRY-GOODS COMPANY.
No. 12,031.   (70 Pac. 582.)

SYLLABUS BY THE COURT.

1. ASSUMPTION OF DEBT—*Fraudulent Inducement.* A creditor who claims the benefit of a contract made by another with the debtor to pay the latter's debt will be bound by the equities between the contracting parties growing out of the agreement, and he cannot enforce the promise if the promisor was fraudulently induced to make it.

2. ——— *Rescission and Restoration.* One who refuses to be

bound by an agreement which he was fraudulently induced to make will not be required to restore anything which he did not receive as a consideration for his engagement.

Error from court of appeals, northern department; JOHN H. MAHAN, ABIJAH WELLS, and SAMUEL W. McELROY, judges.  Opinion filed November 8, 1902. Reversed.

*Rossington, Smith & Histed,* for plaintiff in error.

*Ellis, Cook & Ellis,* for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J. :  A. R. Kramer was a merchant doing business at Galena, Kan., under the name of A. R. Kramer & Co.  He owed the Hargadine-McKittrick Dry-goods Company, a corporation, nearly $15,-000, and on March 2, 1896, executed to it an instrument more nearly in the nature of a conditional bill of sale of his stock of goods than anything else.  Without containing words of sale and transfer, it declared that the stock of goods "is the sole property of said Hargadine-McKittrick Dry-goods Company, and to remain so until the following indebtedness is paid," etc. Nothing was said in the instrument as to whether it should pass title to subsequently acquired goods added to the stock, or constitute a lien on such additions. Inferably, however, from the following provision, it was to do one or the other, perhaps the former :

"It is also further agreed that the said Hargadine-McKittrick Dry-goods Company is to grant the said A. R. Kramer & Co. a line of credit not to exceed $2000, as follows : $1500 in dry-goods and $500 for purchases made from other houses.  No purchases are to be made or debt created without the authority of said Hargadine-McKittrick Dry-goods Company. All cash is to be remitted to the said Hargadine-

McKittrick Dry-goods Company, and all bills to be paid through them.''

The practical construction which the parties gave to the paper by their subsequent dealings under it was that it covered after-acquired additions to the stock. Kramer was to remain in possession of the goods and conduct the business in his own name as before, and make weekly reports to the Hargadine-McKittrick Dry-goods Company, and out of the proceeds of sales pay the indebtedness. This arrangement continued for more than two years, but the indebtedness did not become materially reduced, and the company decided to take possession of the stock of goods and put an end to the transaction. On December 3, 1898, it wrote to Kramer announcing its intention, sending the letter by one Purdy, as its agent. This letter contained the following statement:

'' Mr. Purdy is authorized to say to any one to whom the firm of A. R. Kramer & Co. may owe money for legitimate claims against them of any kind, arising out of the mercantile business, that this company will settle them in full, and Mr. Davis will attend to the matter as soon as he is able to come down.''

Mr. Purdy gave Kramer the assurance he had been authorized as above to make. The stock of goods was surrendered to him and shipped away. Among the indebtedness of Kramer was an account for goods due the Swofford Brothers Dry-goods Company, a corporation. Not being paid, suit was brought by that company against the Hargadine-McKittrick Dry-goods Company to recover on the assumption contract which Mr. Purdy had made under the authority conferred on him. The defense to the suit was that the assumption agreement was induced by the fraudulent representations and concealments of Kramer. It was averred

that he had concealed from the Hargadine company the indebtedness due the Swofford company and many others by the making of false reports, the keeping of secret accounts, and other deceptive practices. On the trial, the defendant offered evidence of the fraud practiced on it, and of the claim that it made the assumption agreement in reliance on the truth of Kramer's representations. This evidence was rejected, for the reason that it was not coupled with an offer to show that the Hargadine company, upon discovering the fraud practiced on it, offered to rescind the contract and transaction by which it entered into possession of the stock of goods. This ruling was affirmed by the majority of the court of appeals of the northern department (*Hargadine v. Swofford*, 10 Kan. App. 198, 63 Pac. 281), but it cannot be sustained. It is contrary to the principle declared by this court in *Clay v. Woodrum*, 45 Kan. 116, 25 Pac. 619, that in actions on an agreement made by one person with another for the benefit of a third, the rights of the latter will be subservient to the equities growing out of the contract between the other two. Had Kramer paid the debt due the Swofford company and brought an action against the Hargadine company to compel reimbursement, he could not have maintained it, in the face of proof of the fraud and concealment charged against him. What Kramer could do or could not do in a action by him against the Hargadine company is the test of what the Swofford company can do or cannot do in an action by it against the same party, because the Swofford company must claim under the same contract that Kramer would have been compelled to claim under had he brought the action. In *Ellis v. Harrison*, 104 Mo. 270, 16 S. W. 198, it was said :

"Whatever right of action a third party to such an

engagement may acquire by virtue of its terms against either of the directly contracting parties, it is clear that, on principle, such right cannot be broader than the party to the contract (through whom the right of action is derived) would have in event of its breach. To state this in another form, the right of action by any outside beneficiary, for whose advantage a contract is made between two other persons, is entirely subordinate to the terms of that contract as made. Such beneficiary cannot acquire a better standing to enforce the agreement than that occupied by the contracting parties themselves."

The case of *Dunning et al. v. Leavitt*, 85 N. Y. 30, 39 Am. Rep. 617, cited and quoted from in *Clay v. Woodrum*, supra, is a pointed authority to the same effect as the above, and there are many others.

The reason given by the district court for its rejection of the offered evidence, to wit, that the Hargadine company could not repudiate the assumption contract, into the making of which it had been fraudulently entrapped, without restoring the *status quo*, is not a valid one. The general rule that a person who receives something under a contract which he would not otherwise have obtained cannot rescind the transaction without making restoration does not apply. The Hargadine company got nothing from Kramer that was not already theirs; the stock of goods belonged to them; they were entitled to its possession; they merely entered on their own. The assumption agreement, as to all indebtedness due to third persons over and beyond the $500 allowed by the express terms of the bill of sale of March 2, 1896, was gratuitous on the part of the Hargadine company. It was not required by the terms of the agreement under which Kramer was holding the goods, and it furnished no consideration for his surrender of their possession.

"One who attempts to rescind a contract on the

ground of fraud is not required to restore that which in any event he would be entitled to retain, either by virtue of the contract sought to be set aside or of an original liability." (*Kley v. Healy*, 127 N. Y. 555, 28 N. E. 593.)

It is suggested that the Hargadine company received from Kramer something additional to the stock of goods, to wit, the store furniture and fixtures. While these were not described in the bill of sale, yet the letter of the Hargadine company of December 3, 1898, treats of them as though they were subject to the terms of that instrument. Many of them were, in fact, disposed of by Kramer himself, in the discharge of his own indebtedness, and some were left in the store building upon the removal of the goods. But a sufficient answer to the claim of new consideration in this respect is that it does not appear that the transfer of any of this furniture or fixtures to the Hargadine company was made to it to induce it to enter into the assumption agreement, and, were it otherwise, there is much doubt, indeed, whether it would constitute, under the circumstances of this case, a reason for invoking the rule of restoration before rescission.

The judgment of the court below is reversed and a new trial ordered.

All the Justices concurring.