AMERICAN LOAN & MORTGAGE CO. et al. v. AMERICAN NAT. BANK OF HOUSTON. (No. 7274.)

(Court of Civil Appeals of Texas. Galveston. April 10, 1917. On Motion for Rehearing, June 27, 1918.)

1. CONTRACTS ⚖164—CONSTRUCTION AND OPERATION.

A corporation took a transfer of property from its president, in consideration of the payment of his debts. The same day in pursuance of a resolution it entered into a tripartite agreement with the debtor and an agent, transferring such property with other property to the agent in consideration of the payment of the corporation obligations together with those assumed. *Held*, that the transactions are to be construed as one contract.

2. CONTRACTS ⚖187(3) — ENFORCEMENT BY THIRD PARTIES — EQUITIES — FAILURE OF CONSIDERATION.

Under an agreement to turn over stock in consideration that the transferee will pay the debts of the transferor, including a note guaranteed by him, upon a failure of delivery of part of the stock the rights of the owner of the note, as beneficiary, are subject to the equities of the original parties.

3. CONTRACTS ⚖187(3) — CONSTRUCTION — PRORATE DISTRIBUTION OF MONEY.

Where one agrees to pay the debts of another, from a specified fund as they become due and are presented, in consideration of the transfer of property, he is not bound to distribute the fund pro rata among the creditors, and upon the failure of the debtor to transfer part of the property after the debts have been partially paid in full at his presentation, the transferee can withhold any part of the fund less than the value of the property not transferred, and is not liable to an unpaid creditor for the proportionate amount which his debt bears to those paid.

4. CONTRACTS ⚖175(2)—PERFORMANCE—EVIDENCE.

Where property is transferred in consideration that debts will be paid from a certain fund as they mature and are presented, and upon a partial failure to transfer the property a sum less than the value of the property not transferred is withheld, in an action by a creditor against the transferee and its agent, testimony of the agent that the money already paid was disbursed at the direction of the debtor and the transferee is admissible on the issue as to the meaning of the contract.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by the American National Bank of Houston against the American Loan & Mortgage Company and Arch MacDonald. From judgment for plaintiff, defendants appeal. Reversed and rendered.

Moody & Boyles, of Houston, for appellants. Presley K. Ewing, of Houston, for appellee.

LANE, J. This suit was brought by the plaintiff, American National Bank of Houston, hereinafter called "bank," against the American Loan & Mortgage Company, hereinafter called "mortgage company," and Arch MacDonald, to recover upon one certain promissory note executed by one George W. Riddle on the 1st day of February, 1910, payable to said bank six months after its date, it being alleged in plaintiff's petition that said mortgage company, in writing, and for a valuable consideration, assumed and agreed to pay said note to plaintiff, together with interest and attorney's fees; that on the 27th day of July, 1910, the defendant Arch MacDonald, of the one part, and W. E. Richards and the defendant mortgage company, of the other part, entered into a valid and binding contract and agreement in writing, whereby he, said Arch MacDon-

ald, for a valuable consideration, promised and agreed for the benefit of plaintiff to furnish the money therefor and therewith to pay the said note, according to its ténor and effect, whereby he became liable and bound to pay plaintiff the sums of money in said promissory note mentioned, including interest and attorney's fees therein provided for, according to the tenor and effect thereof; that plaintiff is the legal holder and owner of said note, which is long since due and unpaid in whole or part, and has been placed, since default in its payment, in the hands of an attorney for collection, under agreement to pay the 10 per cent. stipulated in said note as attorney's fees for collection of same, whereby said 10 per cent. has become due and payable; that by the aforesaid premises and agreements of the defendants they and each of them became and are primarily liable, as between them and said Riddle, to pay said note, according to its tenor and effect, therefore plaintiff has elected to omit him as a defendant, he being a nonresident of this county and only secondarily liable.

After excepting generally and specially to plaintiff's petition, defendants mortgage company and Arch MacDonald each answered denying that they or either of them at any time assumed or promised to pay or otherwise became bound to pay the note sued on, and further specially pleaded that if it should be held and determined that either of them did assume and agree to pay to plaintiff, or its order, the said note, together with interest and attorney's fees, as alleged in plaintiff's petition (which, however, is not admitted, but expressly denied), they allege that the consideration for such agreement, if there was any such agreement, has practically failed, in that as a part of the consideration therefor one W. E. Richards, through whom the agreement is alleged to have been made, was to convey to the defendant mortgage company 1,100 shares of stock in the American National Bank of Houston as part consideration for said agreement; whereas the said Richards conveyed to said defendant only 850 shares of said stock, which said stock was of the par value of $100 per share. Wherefore these defendants say that by reason of the failure of said Richards to so convey the other 250 shares of said stock, which were to be conveyed to said mortgage company by said Richards, the consideration for said alleged agreement has practically and materially failed, and that defendants are not therefore bound by said alleged agreement. Defendants also pleaded the two-year statute of limitation in bar of plaintiff's cause of action.

By supplemental petition plaintiff pleaded as follows:

"Further pleading herein, said plaintiff says that, at the time of the alleged transactions with respect to the note counted on, of, to wit, July 27, 1910, said American Loan & Mortgage Company was practically a holding corporation for said W. E. Richards, into which he had previously put some of his assets, including securities and lands, taking and owning practically all of its stock therefor; that at the time of said transactions it held property and securities of great value, but was under pressing necessity for cash money, which the defendant Arch MacDonald by written contract between him, said W. E. Richards, and defendant, said American Loan & Mortgage Company, bearing date July 27, 1910, then and there agreed to procure, furnish and loan to it, to wit, $125,000, to secure which it was agreed that said MacDonald should have and there was conveyed to him, certain securities and land, out of which he was to reimburse himself expenses in and about obtaining said money so to be loaned by him, and also the amount of said loan, principal and interest, to be evidenced to him by notes of such company, and one-half of the balance realized from such assets he was to have for himself, for his services in that behalf, and in addition he was to be given a proxy to vote the stock of said W. E. Richards in said holding company, thereby giving him full management and control, with a directory of his own selection, which proxy was duly granted; that as part of said contract and transaction said W. E. Richards transferred and turned over to said holding company other and further assets belonging to him, including the alleged stock in the plaintiff bank, which it cannot more definitely or with greater certainty here describe, but which are shown by the books of said holding company, in the control and custody of the defendants, and therefore such matters are within their peculiar knowledge; that as part of said contract and transaction said holding company agreed to become liable upon, assume and pay certain notes upon which he, said W. E. Richards, was liable, including the alleged note herein, and others, which were owing by said W. E. Richards, consisting of one for $15,000, Fourth National Bank, New York, and one for $23,000, note of Valley Route Townsite & Loan Company, held by plaintiff, and one for $2,500, Citizens' State Bank of Bastrop, and one for $3,500, note of Gary Haynes; that the reasonable and market value of said assets and property so transferred and turned over to said holding company under said contract and transaction of June 27, 1910, were equal to or exceeded in reasonable and market value all the obligations and debts, including the note herein counted on, owing by said W. E. Richards, which were assumed by said holding company, so that said holding company was thereby paid by said Richards the sum of the full amount of said notes and obligations, so assumed to be paid by it, said holding company including the alleged note herein counted on, and the averments in said amended answers of want or failure of consideration are without any support and untrue; that all the assets and property which he, said W. E. Richards, agreed to pay or turn over to it, said holding company, in consideration of its assumption, were paid and turned over by him to it, and by it received in due course, and instead of the defendants having failed to pay the alleged note, as agreed to do, on account of any failure or want of consideration, the facts are that the defendant Arch MacDonald a few days after said transactions of July 27, 1910, was duly appointed liquidating agent of this plaintiff, and while acting in that capacity for it and its trustee in that behalf he had and held in his custody, control and power, and subject to his duty and call, the said money which he had agreed to procure, furnish and loan to said holding company, and with which he had agreed to pay the alleged note to this plaintiff, but nevertheless, disregarding his duty to plaintiff in that behalf, he diverted said fund to other purposes and failed to make such payment to plaintiff, either in whole or in part, though justly due to it; but if there was any failure of consideration as alleged, which plaintiff denies, such was applicable to the

alleged note counted on herein only pro rata, and in the proportion which the amount of such note bears to the total indebtedness assumed to be paid by said holding company, in consideration of the value therefor received by it from said Richards, as aforesaid."

By supplemental answer defendants excepted to all allegations of plaintiff's supplemental petition, except such as denied the failure of consideration pleaded by defendants, and except such as reads as follows:

"If there was any failure of consideration as alleged, which plaintiff denies, such was applicable to the alleged note counted on herein only pro rata and in the proportion which the amount of said note bears to the total indebtedness assumed to be paid by said holding company in consideration of the value therefor received by it from said Richards, as aforesaid"

—for the reason that the same are not in reply to anything pleaded by this defendant, and if proper to plead at all, the same should be pleaded in the plaintiff's original petition, and are not proper to be pleaded in its supplemental petition.

The defendant bank by trial amendment alleged:

"That in the alleged agreements of July 27, 1910, whereby the defendants, and each of them, promised and agreed to pay the alleged note, the said note was by mistake described as for $5,500, instead of for the alleged amount of $5,459, the said note not being before the parties at the time, and it being referred to by estimate of the amount, but the note thereby assumed was and is the identical note alleged in plaintiff's petition herein, to which this is an amendment."

That the nature of this case and the opinion to follow may be better understood, we here make the following statement:

On the 27th day of July, 1910, one W. E. Richards, at that time president of said mortgage company, being largely in debt and desiring to have such debts settled, agreed to sell and deliver to said mortgage company 1,100 shares of the stock of the American National Bank of Houston, Tex., and 525 shares of the stock of the Valley Route Townsite & Loan Company belonging to him, and all lands and interest in lands owned by him situated in the counties of Freestone, San Patricio, Harris, and Leon in the state of Texas and in consideration of such agreed sale and delivery of said properties to it by said Richards said mortgage company agreed to assume and pay the following debts due and owing by said Richards, to wit: $15,000, Fourth National Bank, New York. $23,000, American National Bank, Houston. $13,500, American National Bank, Houston. $6,000, Texas Trust Company, Houston. $2,500, Bank of Bastrop. $5,500, note of George Riddle, being the same sued upon in this case. $3,500, note of Gary Haynes. And as further consideration therefor said mortgage company agreed to cancel and surrender to Richards certain certain promissory notes executed by Richards in favor of said mortgage company, aggregating the sum of $89,556.61.

At the time said agreement between Richards and said mortgage company was entered into, to wit, July 27, 1910, and contemporaneously therewith, the board of directors of the mortgage company passed and caused to be recorded in its minutes the following resolution:

"Be it resolved that W. E. Richards, the president of this company, be and he is hereby authorized and empowered to negotiate for and receive from Arch MacDonald, on behalf of this company a loan of $125,000, the same to be evidenced by a series of promissory notes signed by this company and indorsed by it and also indorsed by the said W. E. Richards, individually. And the said W. E. Richards is further authorized to enter into a contract with the said MacDonald, assigning, transferring and delivering to the said MacDonald all such real and personal property, stocks, bonds, bills receivable and accounts receivable as he may deem proper, save and except that certain promissory note for $101,970.53, dated June 15, 1910, executed at Houston, Texas, signed by Allison-Richey Gulf Coast Home Company by W. R. Allison, president, payable to the American Loan & Mortgage Company * * * and all collateral held to secure said note, and save and except 500 shares of the capital stock of the American National Bank of Houston, evidenced by certificates Nos. 315, 294, 4, 5, 244 and 245. Said contract shall authorize the said MacDonald to collect all of the aforesaid bills receivable and accounts receivable, either with or without suit, and to make such settlements, renewals, compromises, adjustments or deductions as may, in his opinion, be advisable, and shall authorize him to sell, transfer and convey all of the other property conveyed to him under said contract. Said sales to be at private sale and for such prices and upon such terms as he may deem advisable, and that out of the proceeds arising from such collections he shall first deduct all expenses, outlays and bonuses paid or incurred by him, and that he shall next pay the full amount of said series of notes amounting to $125,000, hereinafter mentioned, and all interest thereon. And that he shall then pay over and deliver to this company such proportion of the remainder of said proceeds and of the remainder of said property which may not have been disposed of as may have been agreed upon between the said MacDonald and the said Richards, and shall retain the remainder of such proceeds and properties as part of his compensation for services rendered under said contract. Said contract shall provide further that in addition to the above, and as the remainder of his compensation for services thereunder, the said MacDonald shall be entitled to receive from this company such proportionate part as may have been agreed upon between him and said Richards, of all its assets (exclusive of the assets returned to it under its contract). Said contract shall further provide that the said sum of $125,-000, loaned by said MacDonald to this company shall be applied by him to the payment and discharge of such obligations and debts of this company or (either originally incurred by this company or assumed by it) as may be agreed upon between the said Richards and the said MacDonald."

On the same day and contemporaneously with said agreement and passage of said resolution, W. E. Richards, the mortgage company, and Arch MacDonald entered into a tripartite contract in writing, the substance of which, material to the matters presented for our decision, is as follows:

"Whereas, the American Loan & Mortgage Company, a private corporation having its principal offices in the city of Houston, Texas, is indebted to various persons and corporations in

considerable sums of money, and it will be necessary to convert into cash for the payment of said indebtedness a portion of its assets, and, whereas, in order that the same may be done without too great a sacrifice in values, it is desirous of securing the services and assistance of Arch MacDonald in the conduct and management of its affairs, and especially in making sales of its notes, stock and other securities, including real estate and generally to enlist the services of said MacDonald in its behalf. And, whereas, the said American Loan & Mortgage Company is indebted to the said Arch MacDonald in the sum of $125,000, evidenced by a series of notes bearing even date herewith, executed by the said American Loan & Mortgage Company, payable to its order and by it indorsed in blank and also indorsed by W. E. Richards, which said notes bear interest from date at the rate of 8 per cent. per annum and provide for the usual attorney's fees of 10 per cent.: Now, therefore, in order to assure and secure the payment of said notes according to their tenor and effect, the said American Loan & Mortgage Company, acting herein by its president, W. E. Richards, in pursuance of a resolution duly passed and adopted by its board of directors on the 27th day of July, 1910, have sold, assigned and transferred and by these presents do sell, assign, transfer and convey unto the said Arch MacDonald the following described property: [Here follows a long list of personal property.] And the said American Loan & Mortgage Company, in pursuance of said resolution, has also conveyed to the said Arch MacDonald by deed of conveyance duly executed, and delivered, certain real estate in the counties of Freestone, Leon, San Patricio, and Harris, in the state of Texas. The said Arch MacDonald is hereby authorized and empowered to immediately proceed to collect all of the aforesaid bills receivable and accounts receivable, either with or without suit, and to make such settlement, renewals, compromises, adjustments or deductions as may in his opinion be advisable. He is also authorized and empowered to immediately sell, transfer and convey all of the other property which has been conveyed to him by the said American Loan & Mortgage Company, as aforesaid, which sales shall be made by him at private sale and for such prices and upon such terms as he may deem advisable, and with the same effect as though he was the absolute owner thereof. Out of the proceeds arising from such collections and sales the said MacDonald shall first deduct any and all expenses and outlays which may have been incurred by him in and about said business, including any bonus or bonuses that he may have paid or incurred in order to enable him to secure the money which has this day been loaned by him to the American Loan & Mortgage Company, as aforesaid. Out of the said proceeds he shall next pay the full amount of said series of notes amounting to $125,000 hereinafter mentioned, and all interest thereon, whether the said notes shall have matured at said time or not. He shall then pay over and deliver to the said American Loan & Mortgage Company one-half of the remainder of said proceeds and one-half of the remainder of all of said property which may not have been disposed of hereunder, and the remaining one-half of said proceeds and one-half of said undisposed of property shall be the property of and belong to the said Arch MacDonald as part of his compensation for services rendered under this contract. In addition to the above and as the remainder of his compensation for services hereunder, the said MacDonald shall be entitled to receive from said American Loan & Mortgage Company one-half of all assets (exclusive of the assets returned to it under this contract) remaining to it after the payment of all indebtedness now existing against it. The said sum of $125,000 this day loaned by said MacDonald to said American Loan & Mortgage Company

is to be applied by him to the payment and discharge of the following named obligations and debts of said American Loan & Mortgage Company, to wit, City National Bank of San Antonio, $7,000; City National Bank of Galveston, $5,000; Citizens' State Bank of Bastrop, $2,500; St. Louis Union Trust Company, $10,000; Guarantee State Bank of Lufkin, $2,500; First National Bank of Jasper, $3,500; Tyler County Bank, Woodville, $3,500; Gibbs National Bank of Huntsville, $10,000; Palacios State Bank, $5,000; First National Bank of Corsicana, $20,000. And the following obligations and debts originally owing by the said W. E. Richards and which have been assumed by the said American Loan & Mortgage Company, to wit: $15,000, Fourth National Bank, New York. $23,000, note of Valley Route Townsite & Loan Company, held by American National Bank of Houston. $2,500, Citizens' State Bank of Bastrop. $5,500, note of Geo. W. Riddle, held by American National Bank of Houston. $3,500, note of Gary Haynes. All of such debts aggregating the sum of $118,500. * * * The said Arch MacDonald hereby binds and obligates himself to undertake to execute all the duties herein imposed upon him, and that he will endeavor to discharge same to the best of his knowledge, skill, and ability. This contract is executed in duplicate, and each of said duplicates shall be considered, held, and taken to be the original contract."

It is alleged in plaintiff's supplemental petition, and shown by the evidence, that as a part of said contract and transaction (which includes said agreement, resolution, and tripartite contract) said W. E. Richards transferred and agreed to turn over to said mortgage company certain assets belonging to him, including the 1,100 shares of stock of the American National Bank, and it was so understood by all the parties to said contract and transaction. It further appears that in consideration for said transfer and delivery of said property to it, said mortgage company agreed to pay the debts of Richards described in the contract or agreement. It is shown that in pursuance of said contract, agreements, and general understanding of all the parties thereto, the mortgage company did transfer to Arch MacDonald the property described in said tripartite contract, and that MacDonald loaned to said mortgage company $125,000, which was placed in his hands as the agent of the mortgage company; that MacDonald agreed to pay with said $125,000 the obligations described in said tripartite contract as they matured or were presented to him for payment; that MacDonald in an effort to perform his part of said contract paid said obligations as they became due, and were sent to him by W. E. Richards, president of the mortgage company, until he had paid out $116,000 of said $125,000 loaned by him to said mortgage company; that after having made such payments, as it was contemplated by all the parties he should, he became informed that W. E. Richards had not transferred and delivered to the mortgage company 250 of the 1,100 shares of the capital stock of the American National Bank of Houston, of the value of $10,000, which he had contracted to do as a consideration for the payment of his debts, including the

note sued upon and therefore in justice to said mortgage company and for its particular benefit he, as its agent, refused to make further payments of the debts of Richards, especially the note sued upon.

There is neither allegation nor evidence to the effect that MacDonald converted any part of the $125,000 turned over to him to his own use, but, upon the contrary, plaintiff alleges that $9,000 thereof was diverted, and it seems to be conceded that said sum was used in payment of obligations due by the mortgage company. It is also shown that W. E. Richards for valuable consideration promised to pay the Riddle note sued on, and that thereafter the mortgage company and MacDonald promised to pay same for the consideration of the property to be delivered by Richards to the mortgage company.

The case was tried before a jury, which, in answer to special issues submitted by the court, made, among others, the following findings: First, The parties to the agreement of July 27, 1910, mutually intended to include the note sued on as one of the debts owing by W. E. Richards which were to be paid. Second, W. E. Richards did convey to the American Loan & Mortgage Company 850 shares of the capital stock of American National Bank of Houston, instead of 1,100 shares, as he agreed to do. Third, The value of 250 shares of the capital stock of American National Bank of Houston on July 27, 1910, was $10,000.

Both parties requested the court in writing to render judgment in their respective favor upon the verdict of the jury. Whereupon the court refused the request of defendants and rendered judgment in favor of plaintiff for the sum of $7,313.95, said sum being arrived at by abating the face amount of the alleged note in suit of, to wit, $5,459 in the sum of $791.15, leaving a balance of $4,667.85, on which interest was computed at 8 per cent. per annum from August 1, 1910, the maturity of said note, to November 20, 1915, the date of said verdict, making $6,649.05, and adding thereto 10 per cent. as attorney's fee, to wit, $664.90, aggregating $7,313.95, which said abatement was such proportionate part of the failure of consideration of $10,000 as the face amount of said note bears to the indebtedness to be paid to third parties as owing by W. E. Richards, of $69,000 in the transaction between the parties of July 27, 1910. From this judgment defendants have appealed.

The appellants' main contention for reversal and one which we think controls all the material issues presented, is, that the court erred in rendering judgment in favor of plaintiff, because the same is wholly unsupported by the verdict of the jury, or by any evidence whatever.

[1] We think the instruments evidencing the several transactions between W. E. Richards, the mortgage company, and Arch MacDonald on the 27th day of July, 1910, hereinfore mentioned, should be taken together and construed as one instrument. From the face of these instruments and other circumstances shown by the evidence we further conclude that it was the understanding and agreement of all of said parties that the properties sold by Richards to the mortgage company were to be delivered to said mortgage company as the consideration moving said mortgage company to make the promise to pay the debts owing by Richards mentioned in said agreement, and that only in the event such property was so delivered was MacDonald to loan the said $125,000 to pay and with which he promised to pay, among other debts owing by Richards, the note sued on.

[2] We do not think any one has or can, upon any ground of reason, contend that W. E. Richards under the facts of this case could compel either the mortgage company or Arch MacDonald, its agent, to pay more money out for his account than they have paid, so long as he withholds from the mortgage company stock of the value of $10,000, which he agreed to turn over to said mortgage company as a part of the consideration for the promise on the part of said company to pay certain debts of his. We repeat, it would hardly be contended that Richards, after failing to turn over a part of the consideration of the value of $10,000, could successfully maintain an action to require the mortgage company to pay over to him the entire consideration agreed upon to be paid out for him, and as appellee in this case has surrendered no rights against Riddle, the maker of the note sued on, nor against Richards, who assumed the payment of the same, it occupies no better position than does Richards. One who seeks to take the benefits of a contract made by a third person is affected by unperformed conditions required by the contract to be performed by such third person (in this case Richards), and he is bound by the conditions and terms of the contract under which he seeks benefits. He stands in the shoes of such third party through whom he claims, and can have no higher rights under the contract than such person had. In Ruling Case Law, vol. 6, p. 886, § 273, the law is stated as follows:

"Necessarily the rights of a party for whose benefit a promise is made must be measured by the terms of the agreement between the principal parties, and the right to recover from the promisor is not absolute in all cases. The beneficiary is in fact asserting a derivative right. Therefore, among other limitations, the party to be benefited takes subject to all inherent equities arising out of the contract, as affecting the principal parties."

We quote from American & English Ency. of Law (2d Ed.) vol. 7, p. 109:

"The right of a third party to recover is subject to the equities between the original parties springing out of the contract between them. Thus where the promise is void as between the promisor and promisee for fraud, or want of

failure of consideration, the third party is not entitled to maintain an action upon the promise."

In the case of Dunning v. Leavitt, 85 N. Y. 30, 39 Am. Rep. 619, in which the consideration as between the parties to the contract had failed, but the suit was brought by the third person for whose benefit the promise had been made, the Court of Appeals of New York said:

"I know of no authority to support the proposition that a person not a party to the promise, but for whose benefit the promise is made, can maintain an action to enforce the promise, where the promise is void as between the promisor and the promisee for fraud, or want of consideration, or failure of consideration. It would be strange, I think, if such an adjudication should be found. The parties suing upon the promise, in cases like Lawrence v. Fox [20 N. Y. 268], is in truth asserting a derivative right. * * * There is no justice in holding that an action on such promise is not subject to the equities between the original parties springing out of the transaction or contract between them."

See, also, Heath v. Coreth, 11 Tex. Civ. App. 91, 32 S. W. 57; Malanaphy v. Mfg. Co., 125 Iowa, 719, 101 N. W. 640, 106 Am. St. Rep. 332; Green v. McDonald, 75 Vt. 93, 53 Atl. 332; Hargadine-McKittrick Dry Goods Co. v. Swofford, 65 Kan. 572, 70 Pac. 582; Trimble v. Strother, 25 Ohio St. 378; Crone v. Dexter, 68 Mo. App. 122.

[3] The evidence being undisputed that the mortgage company through its agent, MacDonald, had paid out for the account of W. E. Richards all the money which it had agreed to pay for him, except $9,000, and that Richards had made default in turning over to said mortgage company stock of the value of $10,000, which he had agreed to turn over to it as a part of the consideration moving said company to make said contract, neither Richards nor the beneficiary bank can recover in this suit, unless the bank can recover under the contention of the bank that it should be permitted to share proportionately with the other parties whose debts were paid by MacDonald with $116,000 of the $125,000 which he had loaned the mortgage company, which question we will now proceed to discuss.

The trial court held, and appellee here contends, that as there was a failure only of a part of the consideration passing from Richards to the mortgage company, said appellee bank should have been paid its proportionate part of the $125,000 paid out by MacDonald. This contention, in effect, is a plea for equitable relief, and therefore must stand or fall in the adjustment of equities of the parties involved in the controversy. It has been shown by the mutual understanding and agreement of all the parties that MacDonald was to pay the obligations which he was directed to pay as they became due and were presented for payment. He had a right to assume that Richards would turn over to the mortgage company the whole of the consideration

promised it, for its promise to pay Richards' debts, etc., and upon this assumption, and in view of the fact that the obligations were sent to him for payment by Richards as they became due, he not only had the right, but it became his duty, to pay said obligations as they became due and were presented to him for payment. Under the facts of this case MacDonald could not at the beginning have anticipated that there would arise a necessity or demand for a pro rata payment of the debts he promised to pay out of the $125,000. He made such payment as he did make just as it was understood by and between all the parties he would make them, and after he had paid out for the mortgage company $116,000 of the $125,000 in his hands, and not until then, did he discover the default of Richards in not delivering the 250 shares of stock, hereinbefore mentioned, of the value of $10,000. Under these facts it would be unreasonable and inequitable to require either MacDonald or the mortgage company to make further payment of Richards' debts, either in full or pro rata. We have reached the conclusion that appellants' contention should be sustained, and that the judgment of the trial court should be reversed, and judgment here rendered for appellants.

We think plaintiff's original petition sufficiently alleges that Arch MacDonald promised to pay the note sued on out of the $125,000 loaned by him to the mortgage company to authorize the admission of evidence tending to prove such allegation. We also think that the description of the note sued on in the original petition, together with the explanatory allegation in appellant's trial amendment, is sufficient to authorize evidence tending to show that it was the note assumed by the mortgage company.

[4] We also think the court erred in refusing to permit appellant MacDonald to testify that W. E. Richards, as president of the mortgage company, directed him to pay the indebtedness of said mortgage company, and that all the funds of said mortgage company in his hands were paid out by him in accordance with the directions and suggestions and wishes of said mortgage company and said W. E. Richards. But as what we have heretofore said sufficiently disposes of all the material issues presented, we pretermit any further discussion of these matters.

For the reasons above indicated, the judgment of the trial court is reversed, and judgment is here rendered for appellants.

Reversed and rendered.

## On Motion for Rehearing.

In our original opinion heretofore filed, through inadvertence, we stated the date of the three transactions named as constituting the negotiations between the parties to this suit as July 27, 1910, when it should have been stated as June 27, 1910. We also refer-

red to such transactions as "three instruments," and stated that the "three instruments were simultaneously made, and that they constituted but one general contract between all the parties," while we should have said that the three transactions were simultaneously had, and that they constituted but one general act forming the basis for the contract thereafter executed by the parties.

Nothing is better settled in this state than that the court will look through the means used to reach the purpose or purposes which contracting parties had in view in determining whether or not all transactions had between them at the same time, out of which a contract arose were, as a whole, but one general transaction, and that the contracts arising therefrom constitute but one general contract, affecting all the parties to the several transactions. If the circumstances clearly show, as we think they do in the instant case, that the several transactions constituted but one general transaction, they will be treated as parts of the one general transaction, and when taken and considered together, as concluding the general purpose or agreement of all of the parties. When this is done, we cannot escape the conclusion that by these three transactions or agreements it was understood and agreed between said parties that Richards was to, and that he did, transfer all his property named in the transactions to the mortgage company, and in turn the mortgage company was to, and it did, employ MacDonald as its liquidating agent to act under its orders through Richards in the payment of certain of its debts and those of Richards with the $125,000 loaned by MacDonald to the mortgage company under the aforesaid general agreement and understanding of all the parties.

Appellee has filed its motion for rehearing, and therein has complained of the errors mentioned in the first part of this opinion, as well as of our holding that the three transactions mentioned constituted but one general transaction. We have herein admitted and corrected the two errors referred to, but see no reason to recede from our conclusion that the three transactions constituted but one general transaction culminating in one general contract between the parties. In said motion our attention is also called to the fact that in our original opinion we found that Arch MacDonald paid out $116,000 of the $125,000 loaned by him to the mortgage company before he was advised that the 250 shares of stock of the bank which Richards had agreed to transfer and deliver to the mortgage company had not in fact been delivered to said mortgage company. This finding was error. After a careful re-examination of the statement of facts we are unable to find any evidence showing when MacDonald first learned that said stock had not been delivered. It is not made to appear

as to whether he was advised of such nondelivery before he paid out the entire $116,-000, or at some time thereafter. But as we have already said in our original opinion, the right of the appellee bank to recover any part of the money paid out by MacDonald for the mortgage company is subject to the equities between Richards and the mortgage company, the original parties, springing out of the contract between them. Therefore, in view of the fact that Richards failed to deliver 250 shares of bank stock, of the value of $10,000, as a part of the consideration for the making of the contract between himself and the mortgage company, he could not rightfully demand that a debt due by him as indorser to the appellee bank be paid by either the mortgage company or MacDonald out of the money placed in the hands of MacDonald, since MacDonald had paid out $116,000 of the same before said debt became due and before the same was presented to him for payment. If any sum of money, a part of the said $125,-000, less than the value of the 250 shares of bank stock undelivered by Richards, remained in the hands of MacDonald after paying out $116,000 upon the debts designated in the contract between the parties, it was the property of the mortgage company, and neither Richards nor appellee bank could justly demand that any part of same be paid in satisfaction of the note held by said bank while Richards failed and refused to deliver to the mortgage company said 250 shares of bank stock. Since, then, Richards cannot demand a pro rata or further payment of MacDonald in part payment of the note held by the appellee bank, the bank, a third party, who holds a derivative right of payment, cannot demand such payment.

The motion for rehearing is refused.