### AMERICAN NAT. BANK OF HOUSTON v. AMERICAN LOAN & MORTGAGE CO. et al. (No. 195–3250.)

(Commission of Appeals of Texas, Section A. March 2, 1921.)

**1. Principal and agent ⬅136(3)—Agent may bind himself by his own contract.**

An agent, although his agency is known and who has authority to bind his principal through contract, is not precluded from binding himself personally upon such contract, and where upon a construction of the contract it is determined that the agent has substituted his own responsibility for that of his principal, or has pledged his own responsibility in addition to that of his principal, he will be bound accordingly; his liability not being predicated upon his agency, but upon his contract obligations.

**2. Contracts ⬅86—Partial failure of consideration did not invalidate.**

Where mortgage company assumed payment of specified obligations in consideration of a transfer and conveyance of bank stock, and a substantial part of the stock was received, the partial failure of consideration did not invalidate the contract, but was a defense pro tanto thereto.

**3. Contracts ⬅213(1)—Notes assumed to be paid as they mature.**

Where one agreed to pay notes of another from a specified fund, it was his duty to pay the notes as they matured, in the absence of a stipulation as to the time of payment.

**4. Contracts ⬅187(3)—One assuming payment of obligations must pro rate on partial failure of consideration.**

Where one agrees to pay debts of another from a specified fund in consideration of the transfer of property, he is bound to distribute the fund pro rata among the creditors, and upon failure of the debtor to transfer part of the property the transferee can withhold from the fund an amount equaling the value of the property not transferred, but must pro rate the balance, unless some creditors are paid in full without knowledge of the partial failure of consideration; priority of maturity date of obligations being immaterial.

**5. Contracts ⬅164—Contemporaneous transactions held to be construed as one contract.**

Where a corporation took a transfer of property from its president in consideration of the payment of his debts, and the same day in pursuance of resolution entered into a tripartite contract by agreement with the debtor and an agent transferring such property with other property to the agent in consideration of payment of the corporation obligations, together with those assumed, *held* that the transactions may be regarded as one transaction.

**6. Appeal and error ⬅930(3)—Issue not submitted assumed to have been found so as to sustain judgment.**

Under Rev. St. 1911, art. 1985, an issue not submitted nor requested must, on appeal, be deemed as found by the court in such manner as to support the judgment, if there be evidence to sustain the finding.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by the American National Bank of Houston against the American Loan & Mortgage Company and another. From a judgment of the Court of Civil Appeals (205 S. W. 146), reversing judgment for plaintiff and rendering one in favor of defendants, the plaintiff brings error. Judgment of the Court of Civil Appeals reversed and that of the district court affirmed.

Presley K. Ewing, of Houston, for plaintiff in error.

Moody & Boyles, of Houston, for defendants in error.

SONFIELD, P. J. This action was brought by plaintiff in error, hereinafter called "bank," against the American Loan & Mortgage Company, hereinafter called "mortgage company," and Arch MacDonald, to recover upon a certain promissory note executed by George W. Riddle, dated the 1st day of February, 1910, payable to the bank six months after date. The bank alleged that the payment of the note had been assumed by W. E. Richards for a valuable consideration, and for a valuable consideration from Richards, was assumed to be paid by the mortgage company, and by defendant MacDonald agreed to be paid out of the fund of $125,000 loaned by him to the mortgage company and placed in his hands for the payment of the note in suit with others.

The mortgage company and MacDonald pleaded a partial failure of consideration,

arising from Richards' failure to deliver to the company certain shares of bank stock which was in part the consideration for the mortgage company's promise to pay this and the other notes. The bank pleaded that if there was any failure of consideration as alleged, such was applicable to the note sued on only pro rata, and in the proportion which that note bore to the total indebtedness, consisting of the other notes due by Richards which the mortgage company had assumed and MacDonald agreed to pay out of the fund.

On the 27th day of June, 1910, W. E. Richards was president of the bank and of the mortgage company. On that day he agreed to sell and deliver to the mortgage company 1,100 shares of the stock of the American National Bank of Houston, and 525 shares of the stock of the Valley Route Townsite & Loan Company, belonging to him, and all lands and interest in lands owned by him, situated in various counties in this state. In consideration of such assignments and conveyances, the mortgage company by resolution of its board of directors agreed to assume and pay certain enumerated debts owing by Richards, including the note herein sued upon, and further agreed to cancel and surrender to Richards certain notes executed by him in favor of the mortgage company.

The board of directors of the mortgage company on the same day authorized its president to negotiate for and receive from MacDonald on behalf of the company a loan of $125,000, to be evidenced by a series of promissory notes signed and indorsed by the company and indorsed by Richards individually, and to enter into a contract with MacDonald involving a transfer to him of practically all of the property and assets of the mortgage company for certain purposes.

The mortgage company through its president, Richards, and Richards and MacDonald, entered into a tripartite contract in writing, dated the 27th day of June, 1910, the substance of which, material to the matters presented for determination, is as follows:

"Whereas, the American Loan & Mortgage Company, a private corporation having its principal offices in the city of Houston, Texas, is indebted to various persons and corporations in considerable sums of money, and it will be necessary to convert into cash for the payment of said indebtedness a portion of its assets; and, whereas, in order that the same may be done without too great a sacrifice in values, it is desirous of securing the services and assistance of Arch MacDonald in the conduct and management of its affairs, and especially in making sales of its notes, stock and other securities, including real estate and generally to enlist the services of said MacDonald in its behalf; and, whereas, the said American Loan & Mortgage Company is indebted to the said Arch MacDonald in the sum of $125,000, evidenced by a series of notes bearing even date herewith, executed by the said American Loan & Mortgage Company, payable to its order and by it indorsed in blank and also indorsed by

W. E. Richards, which said notes bear interest from date at the rate of 8 per cent. per annum and provide for the usual attorney's fees of 10 per cent.: Now, therefore, in order to assure and secure the payment of said notes according to their tenor and effect, the said American Loan & Mortgage Company, acting herein by its president, W. E. Richards, in pursuance of a resolution duly passed and adopted by its board of directors on the ——— day of June, 1910, have sold, assigned and transferred and by these presents do sell, assign, transfer and convey unto the said Arch MacDonald the following described property: [Here follows a long list of personal property.] And the said American Loan & Mortgage Company, in pursuance of said resolution, has also conveyed to the said Arch MacDonald by deed of conveyance duly executed and delivered, certain real estate in the counties of Freestone, Leon, San Patricio, and Harris, in the state of Texas. The said Arch MacDonald is hereby authorized and empowered to immediately proceed to collect all of the aforesaid bills receivable and accounts receivable, either with or without suit, and to make such settlement, renewals, compromises, adjustments or deductions as may in his opinion be advisable. He is also authorized and empowered to immediately sell, transfer and convey all of the other property which has been conveyed to him by the said American Loan & Mortgage Company, as aforesaid, which sales shall be made by him at private sale and for such prices and upon such terms as he may deem advisable, and with the same effect as though he was the absolute owner thereof. Out of the proceeds arising from such collections and sales the said MacDonald shall first deduct any and all expenses and outlays which may have been incurred by him in and about said business, including any bonus or bonuses that he may have paid or incurred in order to enable him to secure the money which has this day been loaned by him to the American Loan & Mortgage Company, as aforesaid. Out of the said proceeds he shall next pay the full amount of said series of notes amounting to $125,000 hereinbefore mentioned, and all interest thereon, whether the said notes shall have matured at said time or not. He shall then pay over and deliver to the said American Loan & Mortgage Company one-half of the remainder of said proceeds and one-half of the remainder of all of said property which may not have been disposed of hereunder, and the remaining one-half of said proceeds and one-half of said undisposed of property shall be the property of and belong to the said Arch MacDonald as part of his compensation for services rendered under this contract. In addition to the above and as the remainder of his compensation for services hereunder, the said MacDonald shall be entitled to receive from said American Loan & Mortgage Company one-half of all assets (exclusive of the assets returned to it under this contract) remaining to it after the payment of all indebtedness now existing against it. The said sum of $125,000 this day loaned by said MacDonald to said American Loan & Mortgage Company is to be applied by him to the payment and discharge of the following named obligations and debts of said American Loan & Mortgage Company, to wit: [Followed by an enumeration of the obliga-

tions.]. And the following obligations and debts originally owing by the said W. E. Richards and which have been assumed by the said American Loan & Mortgage Company, to wit: [Certain obligations enumerated, including] $5,500, note of Geo. W. Riddle, held by American National Bank of Houston; $3,500, note of Gary Haynes. All of such debts aggregating the sum of $118,500. * * * The said W. E. Richards, as part of the consideration of the contract, agrees to execute to the said Arch MacDonald his proxy irrevocable during the existence of this contract, authorizing the said MacDonald to vote all of the shareś of the capital stock of the American Loan & Mortgage Company owned by him and the said American Loan & Mortgage Company, hereby agrees that during the existence of this contract it will not incur any obligations or indebtedness whatever without the approval of said MacDonald. * * * The said Arch MacDonald hereby binds and obligates himself to undertake to execute all the duties herein imposed upon him, and that he will endeavor to discharge same to the best of his knowledge, skill and ability."

The case was submitted to the jury, on special issues, and the jury found among other things that Richards conveyed to the mortgage company only 850 shares of the capital stock of the American National Bank, instead of 1,100 shares which he had agreed to convey, and that the valueí of the 250 shares which he failed to deliver was $10,000. Upon the return of the verdict, the mortgage company and MacDonald moved for judgment in their favor on the ground that Richards failed ·to deliver to the mortgage company property of the value of $10,000 which he had agreed to deliver in consideration of the assumption of the debts, all of which debts it had paid, except the last two, amounting in the aggregate to only $9,000, and that it further appears from the evidence that it had already paid for the account of Richards upon such debts more than the agreed value of the property which was delivered by Richards to it as consideration for the payment of such debts. The court refusèd this request, and granted the motion of the bank, rendering judgment in its favor in the sum of $7,313.95. The sum was arrived at by abating the face amount of the note in suit, which was $5,459, in the sum of $791.15, leaving a balance of $4,667.85, which, together with interest and attorney's fees, aggregated the amount of the judgment. The abatement allowed was such proportionate part of the failure of consideration of $10,000 as the face amount of the note bore to the indebtedness to be paid to third parties as owing by Richards, amounting to $69,-000. On appeal the judgment of the district court was reversed and judgment rendered for defendants in error herein. 205 S. W. 146.

It is insisted by MacDonald that under the tripartite contract he was merely employed as the agent of the mortgage company; that while the mortgage company assumed and agreed to pay certain obligations of Richards, including the note in suit, he did not personally assume liability for any of the debts; that his only duty was to apply the $125,000 to the payment of the specified obligations; and that the evidence establishes that no part of the fund was converted to his own use; from which it follows that if he in any wise failed in the performance of his duty, his liability was alone to the mortgage company, his principal, and not to a third person damaged through his nonfeasance. In support of this contention he cites and relies upon the cases of Labadie v. Hawley, 61 Tex. 177, 48 Am. Rep. 278, and Eastin & Knox v. Texas & P. Ry. Co., 99 Tex. 654, 92 S. W. 838. The· proposition announced in these cases is well recognized in reference to an agent's liability in tort, involvihg the distinction between his. misfeasance and nonfeasance.

The liability sought to be imposed upon MacDonald herein arises out of contract, and is governed by wholly different considerations from those governing his liability in tort. 1 Mechem, Agency (2d Ed.) § 1451.

[1] An agent, although his agency is known; and who has authority to bind his principal: through contract, is not precluded from binding himself personally upon such contract. Where upon a construction of the contract it is determined that the agent has substituted his own responsibility for that of his principal, or has pledged his own responsibility in addition to that of his principal, he will be bound accordingly. His liability is not predicated upon his agency, but upon his contract obligations. 1 Mechem, Agency (2d Ed.) § 1419. The present case, we think, comes within the rule that when the agent has such an interest of his own, together with his principal, both principal and agent may be held upon the contract. 1 Mechem, Agency (2d Ed.) § 1426.

The mortgage company was in fact the holding company for Richards' property. Both Richards and the mortgage company became financially involved. A loan from MacDonald was negotiated. He was to receive, not only interest upon the loan, but other and large considerations. The tripartite contract was executed by the mortgage company, Richards and MacDonald. It was supported by a sufficient consideration moving to and from the several parties, and it clearly defined their respective duties and obligations. The money borrowed from MacDonald was by the mortgage company appropriated to the payment of specified obligations. MacDonald assented to the appropriation, and the fund was delivered to him, he binding and obligating himself to apply it to the purpose for which it was appropriated.

The mortgage company became liable to the holders of the obligations which it had assumed. These debts of Richards became its debts. MacDonald agreed with the mortgage company to pay these debts out of the money placed in his hands by the mortgage company for that purpose, thereby becoming

likewise liable to the holders of such debts. The note in suit owned by the bank, being one of the obligations of Richards so assumed by the mortgage company, and agreed to be paid by MacDonald out of the fund, if the bank was denied participation in the fund through the wrongful acts of MacDonald, it could maintain an action against him. His liability does not rest upon his agency, but upon his contract obligation, which inured to the benefit of the bank. Mathonican v. Scott & Baldwin, 87 Tex. 396, 28 S. W. 1063.

[2] Under the contract, the mortgage company assumed and became liable for the payment of the specified obligations of Richards, the consideration being the transfer and conveyance to it of certain property by Richards. The mortgage company received all the property agreed to be delivered to it other than the 250 shares of bank stock. The consideration remaining and received being substantial, the partial failure of consideration, under the facts herein, did not invalidate the contract, but was a defense pro tanto thereto. 6 R. C. L. 685.

It may be conceded, as held by the Court of Civil Appeals, that the mortgage company and MacDonald could not be compelled to pay more than the amount of the obligations assumed, less the value of the property which Richards failed to deliver. The judgment of the district court does not involve a more extended liability. The point of difference is as to the duty of the mortgage company and MacDonald in the disbursement and application of such amount.

The district court held it the duty of the mortgage company and MacDonald to apply the fund under the equitable pro rata rule, abating each obligation in proportion, rather than the paying all to some and denying any participation to others. The Court of Civil Appeals was of opinion that all the notes assumed, except that in suit and one other, both aggregating less than the amount of the deficiency of the consideration, having been paid, neither Richards nor plaintiff bank, which occupied no better position than Richards, could require further payment or hold the mortgage company or MacDonald to the duty of proportionate payments.

The contract does not give the due date of the various notes assumed, or provide for their payment as they respectively matured, nor does it specify any time of payment. It is in evidence that the notes matured at different dates. The undisputed testimony of Richards, president of both the mortgage company and the bank, was that the notes were sent from his office as they matured, and were thereupon paid by MacDonald.

[3, 4] In the absence of a stipulation as to the time of payment, it was clearly the duty of MacDonald to pay the notes as they matured; and such payments so made, without knowledge upon his part of the partial failure of consideration, though resulting in the bank's exclusion from participation in the fund, would not render him liable to the bank.

[5] The contract between the mortgage company and Richards, the loan by MacDonald to the mortgage company and his agreement to apply the same, the conveyance and transfer to MacDonald of the assets of the mortgage company, and the resolutions of the board of directors of the mortgage company authorizing the several acts, were all contemporaneous, and may well be regarded as one transaction, ultimating in the tripartite contract. In virtue of that contract, Richards retained the presidency, but MacDonald became the practical head of the company, its managing agent. Virtually all of the assets of the mortgage company were conveyed and transferred to him with power of sale and conveyance and general control and management. Proxies were to be executed whereby he could vote all of the stock of the company. Richards at the date of the transaction was also president of the American National Bank. That bank within a short period after the transaction went into liquidation, and MacDonald was appointed its liquidating agent. It was shares of this bank stock that Richards failed to deliver to the mortgage company, resulting in the partial failure of consideration.

The mortgage company was, of course, charged with knowledge of the partial failure of consideration. Whether in view of the above facts and the legitimate deductions therefrom MacDonald would be charged with like knowledge need not be determined. It cannot be questioned that the evidence raised the issue. Had the issue been submitted to the jury, resulting in a finding that MacDonald had such knowledge prior to or at the time of the payments made by him, it could not be held that the finding was unsupported by evidence.

[6] The cause was submitted upon special issues. The issue of MacDonald's knowledge was not submitted, nor its submission requested. Under article 1985, R. S. 1911, an issue not submitted nor requested, must, on appeal, be deemed as found by the court in such manner as to support the judgment, if there be evidence to sustain the finding. In the state of the record, MacDonald must be held to have had such knowledge.

Can the mortgage company or MacDonald defend against the bank's action on the ground that obligations maturing before that of the bank had been paid in full, whereby the fund, less the credit for the deficiency, was entirely exhausted, such payments having been made with knowledge of the partial failure of consideration and the resultant right in the mortgage company of abatement to that extent in payment of the obligations assumed? We think not.

In view of the partial failure of consideration, it may be that the mortgage company

and MacDonald could have declined to make any payments out of this fund; but, having with knowledge of such partial failure of consideration assumed to apply the funds to the obligations, they were bound to a rightful application.

The fund was for the benefit of the holders and owners of the obligations. Each had a like beneficial interest therein. All of the obligations were of the same rank or grade. The owners and holders stood in similar relations. In such case equality is equity. The fund being insufficient, it should have been ratably applied to the several obligations, each bearing its pro rata part of the deficiency. 1 Pomeroy Eq. Juris. (4th Ed.) §§ 405, 406.

With knowledge of the partial failure of consideration, priority of the maturing date of the other obligations did not authorize their payment in full to the exclusion of the bank from any participation in the fund.

Being of opinion that both the mortgage company and MacDonald are liable to the bank, in the manner and to the amount as found by the district court, we recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.