Roy POWELL, Appellant,

v.

OLD TEXAS MINING & OIL COMPANY and Blanton W. Burford, Appellees.

No. 6937.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 7, 1959.

Rehearing Denied Jan. 4, 1960.

Scurry, Scurry, Pace & Wood, Dallas, for appellant.

Turner, White, Atwood, McLane & Francis, Dallas, for appellees.

NORTHCUTT, Justice.

Roy Powell originally brought this action against Old Texas Mining & Oil Company to recover $98,000 damages contending that under the terms of certain representations and the two written contracts between them that the company agreed to issue and deliver to him common stock of the company of a reasonable market value of $100,000, but had issued to him stock of the value of only $2,000 and thereby damaged him in the sum of $98,-000. Under the terms of the original written contract, Roy Powell was selling to the company certain oil properties located in Cooke County, Texas, for the agreed value of $135,000. Said original contract provided the consideration for such properties was 40,000 shares of the common stock of the company of the par value of 10 cents per share; a promissory note for $85,000 payable on or before six months with interest at the rate of 5 per cent and $50,000 payable from a reservation of 80 per cent of all oil, gas and other minerals. There

is no question involved in this suit concerning the $85,000 note or the $50,000 to be paid from that part reserved. Appellants contend that the contract of purchase provided that he was to receive as a part of the consideration a $100,000 worth of common stock of defendant, computed at a subsequent public offering price, which public offering was never held. In plaintiff's first amended petition he alleged in the alternative that the contracts expressly or impliedly obligated the defendant to have a public offering of its stock, or in the alternative that the contracts were ambiguous and the intent of the plaintiff and the defendant was a fact issue for the jury. The trial court originally granted defendants' motion for summary judgment and overruled plaintiff's motion for summary judgment.

In the summary judgment dated November 13, 1958, it further provides: "Plf. is hereby given leave to amend." There was no appeal taken at that time from the summary judgment but thereafter on February 24, 1959, the plaintiff filed his second amended petition in which he made Blanton W. Burford a party defendant together with Old Texas Mining & Oil Company. On February 28, 1959, both defendants answered plaintiff's amended petition and Old Texas Mining & Oil Company filed a cross action. We will not mention other pleadings. Thereafter, on March 3, 1959, the case was tried to a jury. At the close of the plaintiff's evidence, the defendants moved for an instructed verdict, and, at the end of defendant's evidence, the plaintiff moved for an instructed verdict as to the cross action of Old Texas Mining & Oil Company. Both requests were granted and the court instructed the jury as follows:

"Gentlemen of the Jury:

"You are instructed to return your verdict herein in favor of the Defendants, Old Texas Mining & Oil Company and Blanton W. Burford, against Plaintiff, Roy Powell, as to Plaintiff's Original Action hereon; and also in favor of Plaintiff, Roy Powell, against Defendants, Old Texas Mining & Oil Company and Blanton W. Burford, as to Defendants' Cross-Action, and your foreman will sign the verdict below."

The jury returned to court the following verdict:

"We, the Jury, under the instruction of the Court, return our verdict herein in favor of the Defendants, Old Texas Mining & Oil Company and Blanton W. Burford, against Plaintiff, Roy Powell, as to Plaintiff's Original Action, and in favor of Plaintiff, Roy Powell, and against Defendants, Old Texas Mining & Oil Company and Blanton W. Burford, as to Defendants' Cross-Action."

If it were not for the fact that the trial court in its order sustaining the motions for directed verdict referred to the order granting summary judgment, we doubt that the summary judgment could be considered here since the plaintiff did not perfect his appeal in time from the original granting of the summary judgment. The order overruling appellant's motion for summary judgment is not an appealable order. When the trial court in its order granting Old Texas Mining & Oil Company's a summary judgment gave the appellant leave to amend, and the appellant amended and made Burford party dependent and then the case was tried to a jury and instructed verdict given and no appeal was taken from that judgment, the summary judgment was set aside.

The plaintiff, appellant here, presents his appeal solely upon the action of the trial court in granting the summary judgment. The appellant's three assignments of error are as follows:

"First Point of Error

"The Trial Court erred in granting Defendant's Motion for Summary Judgment and in overruling Plaintiff's Motion for Summary Judgment because

the contract involved herein constitutes an *express* promise by Defendant, which admittedly was not performed, to have a public offering of its stock and on the basis of such public offering to issue to Plaintiff $100,000.00 worth of stock.

"Second Point of Error

"The Trial Court erred in granting Defendant's Motion for Summary Judgment and in overruling Plaintiff's Motion for Summary Judgment because the promises and statements contained in the contract involved herein, when construed in the light of the undisputed evidence, create an *implied* contract by Defendant, which admittedly was not performed, to have a public offering of its stock.

"Third Point of Error

"The Trial Court erred in granting Defendant's Motion for Summary Judgment because one part of the contract recites that Plaintiff's consideration shall be $100,000.00 worth of stock, which another part states that it shall be 40,000 shares of common stock, and this makes the contract ambiguous and creates a quotation of *fact* as to the intention of the parties."

The final judgment and instructed verdict does not mention any action taken by the court as to the summary judgment. Should we sustain the assignments of appellant as to the summary judgment, we are of the opinion the final judgment would still be in full force and effect since no appeal and assignments of error are presented as to that final judgment. We cannot hold that the court erred.

We are of the opinion, however, in considering together the two written agreements in question here that the interpretation as to the meaning expressed in the two written agreements will dispose of both the final judgment and the summary judgment. It is stated in the case of Guadalupe-Blanco River Authority v. City of San Antonio, 145 Tex. 611, 200 S.W.2d 989, 996, by the Supreme Court:

"Under the facts heretofore set out, the purchase of the property of SAPSCo by the City and the lease of part thereof—Comal plant—to GBRA constituted a single transaction. It is true the conveyance to the City and the lease to GBRA were evidenced by separate instruments, but these instruments were all executed at the same time as the result of a common understanding to consummate one over-all transaction, and are therefore to be construed together as one contract. Howard v. Davis, 6 Tex. 174; Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472; American National Bank v. American Loan & Mortgage Co., Tex.Com. App., 228 S.W. 169; Spillman v. Hibler, Tex.Civ.App., 60 S.W.2d 1103; Rev.Stats., Art. 3713. Common Law Rules of Evidence, Rule 21, Vernon's Ann.Civ.Stats., following article 3713."

█ The original contract stated that plaintiff was to receive 40,000 shares of Old Texas Mining & Oil Company of the par value of 10 cents per share and then the $85,000 and the $50,000 as above mentioned. It is to be noticed that in the original contract the agreed value of the property the plaintiff was selling was $135,000 and there is no contention he has not received that amount. We think the contracts clearly show that the appellant was also to receive the additional consideration of $100,000 worth of stock. The number of shares of stock to be based upon the term of the contracts. The plaintiff was not satisfied as to how the original contract was to be considered concerning the stock. The defendant spelled it out to him as follows:

"This agreement provides that as part of the consideration we are to issue to you 40,000 shares of Common Stock of the par value of 10¢ per share, of Old Texas Mining & Oil Co., a ·Del-

aware corporation. *It is the understanding between us that the subsequent public financing by us is to be based upon a sales price of at least $2.50 per share.* (Emphasis ours.) In the event that the next public sale of stock by us is at a price less than $2.50 per share the consideration will be adjusted so that the aggregate amount of stock issued to you in consideration for said leases will amount to $100,000.00 computed at the said public offering price. For example:

"(1) If the public sale is at $2.00 per share, we will issue to you an additional 10,000 shares making a total of 50,000 shares as the stock part of the consideration;

"(2) If the public sale is at $1.50 per share, we will issue to you an additional 16,667 shares making a total of 66,667 shares as the stock part of the consideration;

"(3) If the public sale is at $1.00 per share, we will issue to you an additional 60,000 shares making a total of 100,000 shares as the stock part of the consideration."

We think it is clear that the 40,000 shares were taken at the speculative value of $2.50 per share as making up $100,000. If that were not true the remaining portion stating if the public sale is for less the plaintiff was to receive more stock would have no meaning. When the contract stated:

"It is the understanding between us that the subsequent public financing by us is to be based upon a sales price of at least $2.50 per share."

It did not mean that the company had to sell any stock but that if such a sale should be made it would be based upon a price of at least $2.50 per share, and if it did sell for less the plaintiff was to get additional stock. The company could offer the stock for any price it cared to, but if sold for anything less than the $2.50 per share the company would give additional stock, but if never sold for less the appellant had received the stock he was entitled to receive. Reasoning further as to the meaning of the contracts. Paragraph 1 of the second letter states: "If the public sale is at $2.00 per share we will issue you an additional 10,000 shares making a total of 50,000 shares as the stock part of the consideration." We think this clearly shows that the 40,000 shares originally issued were taken at the agreed speculative value of $2.50 per share although the agreement states the par value of the 40,000 shares was 10¢ per share, because he was never to get anything further unless the stock was offered for sale at a price less than $2.50 per share. If the 40,000 shares originally were worth only $4,000 as stated in the contract, and then the sale should be made at $2 per share and then the plaintiff was to get 10,000 more shares that would make the plaintiff only receiving $4,000 and 10,000 more shares making the total value over the original $4,000 of $20,000 unless you consider the plaintiff accepted the 40,000 shares at the value of $2.50 per share. The contracts stated nothing more than we base our financing at the rate of $2.50 per share, and we guarantee you we will not sell for less but if we do we will protect you by giving you additional stock. Since no showing has been made that any sale has been made for less than $2.50 per share we are unable to see where plaintiff has been damaged.

Judgment of the trial court is affirmed.

CHAPMAN, Justice (concurring).

I agree with the result reached by my associates in this case but not altogether with the reasons leading to the result. If I understand the record the trial court granted a summary judgment for defendant below, appellee here, on November 13, 1958, and at the same time denied appellant's motion for summary judgment. The summary judgment granted was not appealed from within the time required by law. As a matter of fact, it was more than

four months from the time the summary judgment was granted for appellee before appellant's appeal was perfected to the Court of Civil Appeals. The summary judgment was granted appellee on an alleged cause of action based upon a written contract. On February 24, 1959, appellant, with leave of the court, filed an amended petition, made a new party, and went to trial before a jury on both the written contract alleged and a new alleged cause of action on alleged false verbal promises. From this last trial he received an adverse judgment from which he never attempted to perfect an appeal and which is now final.

The summary judgment disposed of all parties and all questions before the court at that time. To permit appellant to go back four months later and appeal from the summary judgment would be to hold there is no finality to a summary judgment. The case should have been dismissed for lack of jurisdiction.